CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 15 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHANE CHRISTIAN UPRIGHT, | ) CASE NO. 7:11CV00595 |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| vs. | ) |
| JOHN S. GARMAN, ET AL., | ) By: James C. Turk |
| | ) Senior United States District Judge |
| Defendant(s). | ) |

Shane Christian Upright, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that state prison officials violated his constitutional rights related to his prison job, his medical needs, and a disciplinary charge. Upon review of the record, the court summarily dismisses the complaint for failure to state any actionable claim under § 1983.

I

Upright's submissions to the court consist of a § 1983 form, a scattered narrative of events which incorporates an attached state habeas corpus petition as the statement of facts, a statement of the relief sought, a series of accusations against individual defendants, and a stack of more than 250 pages of documents offered as exhibits. After reviewing all of Upright's submissions, the court has pieced together the following sequence of events on which Upright bases his claims.

Prison officials at Augusta Correctional Center (ACC) assigned Upright to a prison job in May 2009, in which his job duties included working with another inmate to place five-gallon water coolers in the recreation yard. (ECF No. 1-2, p. 5) At some point, ACC switched to ten-gallon coolers for the recreation yard, and after the inmate who had assisted Upright with the

coolers left ACC in early 2010, Upright moved the water coolers by himself. (ECF No. 1-2, p. 6; 1-3, p. 52)

Upright saw Dr. Marsh on April 7, 2010, complaining moving the water coolers by himself was causing him to suffer pain. (ECF No. 1-2, p. 5) The doctor assigned Upright to "Work Status C" and noted in his medical records that Upright still wanted to work, but should not lift over 20 pounds. (ECF 1-1, p. 1-2)

Despite his work status change, Upright continued performing his recreation yard job. On the evening of June 2, 2010, Upright injured his back while working and reported this fact to Officer Tolson, who was supervising him. The next morning Upright told Tolson that he needed to go to the medical unit to have his back injury evaluated, and Tolson agreed that he could go. (ECF 1, p. 14; 1-2, p. 6) Medical staff advised Upright to put ice on his back and take pain medication; they also wrote Upright a medical pass that temporarily excused him from work, effective June 3-8, 2010. (ECF 1-3, p. 31) Upright alleges that during the period of the medical pass, medical staff "refused to schedule [Upright] to be examined and treated by the statutory physician" or to make "post-diagnosis medical assessment regarding the effectiveness of the prescribed treatment." (ECF No. 1-2, p. 6)

On June 9, 2010, Officer Blair called Upright out to perform his water cooler job. (ECF 1-1, p. 3) Upright showed Blair the medical work pass that had expired on June 8, 2010. Blair sent Upright to medical to ask for an updated pass, but when Upright returned, he told Blair that medical staff had told him to sign up for sick call to be reevaluated. Blair then told Upright that he would receive a disciplinary charge if he did not go to work. Upright told Blair that because of his medical condition, he was not supposed to lift more than 20 pounds, that the coolers weighed more than that, and that he could not lift them without injuring himself. (ECF 1-2, p. 7)

2

Blair told Upright that he was fired from his job on the recreation yard (ECF 1-3, p. 28) and then wrote a disciplinary report charging Upright with refusing to work.

On June 15, 2010, Hearing Officer Hostetler conducted a disciplinary hearing. Upright asked to have his medical records submitted for review at the hearing, to show the hearing officer that Dr. Marsh had assigned Upright a work status C and had indicated that he should not lift more than 20 pounds. Upright also requested witness statements from various nurses about his medical work status change. Without considering any of this information related to Upright's medical condition, the hearing officer found that Upright had failed to present any documentation to Blair that excused Upright from performing his job duties on June 9, 2010, found Upright guilty of the charge, and imposed a reprimand as the penalty for the conviction. This finding was upheld on appeal to the warden and the regional director. (ECF 1-1, pp. 7-10)

Upright then filed a petition for a writ of habeas corpus in the Circuit Court for Augusta County, seeking to overturn the disciplinary conviction. (ECF 1-2, p. 1). The clerk of the Court returned Upright's submissions to him with a letter, stating: "The relief which you have requested, to 'cause all record of the unlawful Conviction of Category II Offense 200 to be permanently expunged' from your records, is not addressed by a writ of habeas corpus." (ECF 1-2, p. 1)

In his complaint (ECF No. 1, pp. 2-3), Upright sues John S. Garman, Regional Director; Warden Braxton; Assistant Warden Hollar; Dr. Marsh; Nurse Meadows; LPN Flint; LPN Roach; Work Supervisor Blair; Officer Tolson; Officer Grizzard; Lt. Peters; Lt Morani; Sgt. Burke; Medical Records Secretary Helpler, and Hearing Officer Hostetler. Upright asserts, generally, that from April 7, 2010 until June 9, 2010, he told all of the defendants that his medical status exempted him from doing his water cooler job because the coolers weighed more than 20

3

pounds. The defendants all allegedly threatened that if Upright refused to do his assigned job, he would receive institutional charges, so Upright alleges that he "was forced to work" until he injured himself and was then falsely charged for refusing to work. Upright also makes specific personal allegations against each defendant (ECF No. 1, pp. 6-18), related to these events. At the end of the complaint, Upright also states generally

> medical started taking away [his] pain medication Neurontin. [He] was forced to try other meds that made [him] sick. After a year, [he] started getting put back on Neurontin, [but] still [has] trouble getting it even after being ap[p]roved by Richmond to take it.

(ECF No. 1, p. 19)

Upright asserts that the defendants' actions violated his constitutional rights related to his job, his medical needs, and his disciplinary conviction. As relief in this action, Upright seeks to have the disciplinary charge overturned; to be prescribed 3600 mg Neurontin for his pain; to have a prison job; to be reimbursed for the cost of photocopies and medical copayments; and to get his "good time back."

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). A § 1983 plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be

4

enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A.

Inmates have no independent constitutional right to a prison job, and as such, prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles. See, e.g., Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995). An inmate has no constitutionally protected property interest in keeping any particular prison job. See, e.g., Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program). Under these principles, Upright has no constitutional claim against any of the defendants regarding the loss of his job or defendants' failure to adjust the water cooler job responsibilities so that Upright could maintain that job safely in light of his medical needs. For the same reasons, Upright also has no actionable claim for injunctive relief to obtain another prison job. The court will summarily dismiss all Upright's claims regarding his assigned work duties or the loss of his job, pursuant to § 1915A(b)(1), for failure to state a claim.

B.

To prove a constitutional claim related to an unsafe jail condition, an inmate must show that the defendant official acted with deliberate indifference–that he knew, subjectively, the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). Plaintiff must also show, objectively, that he suffered a serious physical injury as a result of the defendant's deliberate indifference. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Officials' negligent actions simply do not give rise to any constitutional claim actionable under

§ 1983, even when an inmate suffers some injury as a result. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections).

A prison official's deliberate indifference to an inmate's serious medical needs also violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). On the other hand, a claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Medical malpractice or other negligent actions related to medical care do not state a federal claim. Estelle, 429 U.S. at 105-106. Prison personnel with no medical expertise may rely on the opinion of the medical staff as to the effect of jail conditions on an inmate's physical condition. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990); Smith v. Barry, 985 F.2d 180, 184 (4th Cir. 1993) (affirming directed verdict for prison guards not in position to "act meaningfully" with regard to inmate's medical needs).

1. General Claims

Upright blames the defendant prison officials as a group for failing to ensure that once the doctor changed his work status for medical reasons, Upright was no longer required to lift more than 20 pounds. Because Upright had no constitutional right to have his existing job duties adjusted to match his new medical work limitations, however, none of these defendants violated his rights by failing to make such adjustments for him. Moreover, since Upright knew he should not lift more than 20 pounds, all of the defendants reasonably could have believed that Upright

6

would take any necessary action to avoid doing so—by seeking a medical work pass or by requesting a job change. Thus, Upright's general allegations do not demonstrate that any individual defendant knew that his or her actions (or failure to act) would cause Upright to suffer harm, as required to show deliberate indifference. Farmer, supra. Moreover, for reasons explained below, Upright's specific allegations against each defendant also fail to state actionable claims under § 1983.

2. Dr. Marsh

Upright alleges that from April 7 to June 9, 2010, he told Dr. Marsh that no one would believe that Upright was "Medical Code C," but the doctor "did nothing to help me" get the defendants to "comply with [the] prescribed treatment" (ECF No. 1, p. 9), apparently referring to the doctor's order that Upright should not lift more than 20 pounds. Upright does not allege that the doctor ignored Upright's back problems. Upright alleges that Dr. Marsh listened to his complaints that the water cooler job hurt his back, changed his work status code to reflect that medical problem, and properly documented the status change, according to policy, thus fulfilling his professional responsibility regarding Upright's medical needs. At this point, the doctor could reasonably have relied on Upright to use the documented work status change to request a job that did not require him to lift more than 20 pounds.

Upright does not allege facts demonstrating that Dr. Marsh had any procedural mechanism or independent authority to order prison officials to change Upright's work assignment or job duties, based merely on the work status change. Moreover, even if Upright could show that the doctor or the nurses failed to document Upright's medical status properly under prison procedures, such negligence is not sufficient to support a § 1983 claim against them. Estelle, 429 U.S. at 105-06 (1976). Upright fails to demonstrate that Dr. Marsh acted with

7

deliberate indifference to any known risk of harm related to Upright's work status change, and the court summarily dismisses all such claims against the doctor, pursuant to § 1915A(b)(1).[1]

Upright also fails to state any claim against Dr. Marsh or any of the other medical defendants regarding the changes in Upright's medication. Upright's allegations and submissions clearly indicate that the doctor and nurses responded to his complaints about his medical needs, provided treatment, monitored its effectiveness, and made adjustments according to their medical judgment. While Upright disagrees with the course of treatment he received, his allegations do not support a claim that anyone acted with deliberate indifference to his needs, as necessary to state an actionable claim under Estelle.[2] The court summarily dismisses Upright's medication claim, pursuant to § 1915A(b)(1).

3. Defendants Grizzard, Burke, Moran, Peters, and Hollar

Upright alleges that he told Officers Burke, Moran, and Peters for two months that he was "Code C," that Officer Grizzard knew that Upright no longer had a coworker to help him lift the heavy coolers, that Upright told Officer Blair that he was not supposed to lift more than 20 pounds, but she did not ask medical staff about Upright's work status change, and that Assistant Warden Hollar threatened that if Upright did not "shut up about this," he would get a disciplinary charge and a transfer, lose good time, and lose his job. (ECF No. 1, pp. 8, 17-18) Upright does

---

[1] Upright also alleges generally that during the period of time covered by his medical work pass, none of the defendants followed up on Upright's condition to determine whether the treatment they prescribed was effective. He also complains that Nurse Flint refused to give Upright an extension on his medical work pass on June 9, 2010 (ECF No. 1, p. 11). Upright knew the date on which the work pass expired, however. He does not allege that he notified Flint or any of the individual defendants before the work pass expired that he was still having trouble with his back or that he needed to be reevaluated for an extension of the work pass. Accordingly, Upright fails to show that any of the defendants knew he needed these additional services or was otherwise deliberately indifferent to a serious medical need.

[2] Upright's complaint about medical copayment charges fails to implicate any constitutionally protected right. So long as an inmate is not denied medical treatment merely because he cannot pay for the full cost of that care, the state's decision to charge him a portion of that cost is a matter of state law, not actionable under § 1983. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983).

8

not allege that he presented these officers with medical documentation of his work status change or that he filed a proper request to change job assignments for medical reasons. Moreover, defendants' alleged advice to Upright (that if he refused to do his assigned job, he would get a disciplinary charge) was a statement of prison policy, not a demonstration of indifference to his medical needs. Each of these officers reasonably could have believed that if Upright knew his current job would cause him physical harm, Upright would take steps to obtain a written medical excuse not to work or to request a job change. Thus, Upright fails to demonstrate that any of these officers knew that his or her actions would cause Upright to physically injure himself working a job that required him to lift more weight than the doctor recommended. Upright's allegation that the correctional officers failed to investigate his medical status change on their own initiative states, at most, a claim of negligence, not a claim of deliberate indifference actionable under § 1983.

For the stated reasons, Upright fails to state any claim that these defendants acted with deliberate indifference to his serious medical needs or to the risk that his medical condition made his current job dangerous for him. All such claims will be summarily dismissed without prejudice, pursuant to § 1915A(b)(1).

C.

When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Thus, only where a disciplinary penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" does the inmate have a liberty interest requiring constitutionally mandated due process protections. Sandin v. Conner, 515 U.S. 472, 484 (1995). Disciplinary measures that merely limit the inmate's privileges, property,

or activities do not constitute "atypical and significant" hardship in relation to the ordinary incidents of prison life and do not create a liberty interest, triggering federal due process protection. Id.; Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Allegations that prison officials violated state prison procedures do not amount to a constitutional violation actionable under § 1983. Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that where state law grants more procedural rights than the Constitution requires, state official's violation of state procedure is not a federal due process issue).

Upright complains that documentation or information the nurses provided to the disciplinary hearing officer was inaccurate or incomplete[3]; that Tolson did not write an incident report about Upright suffering a work-related injury to his back on June 2, 2010 (ECF No. 14); and that Hepler failed to provide Upright with photocopies of his medical records in time for him to present them at the hearing (ECF No. 1, p. 15). Upright also alleges that Hearing Officer Hostetler, in finding Upright guilty of refusing to work, failed to address the fact that Upright is "Medical Code C" and unable to lift more than 20 pounds (ECF No. 1, p. 16); and that Warden Braxton and John Garman mishandled Upright's appeal of his disciplinary conviction and failed to address the portion of his appeal regarding his assignment to Work Status C (ECF No. 1, p.

---

[3] Specifically, Upright alleges that Nurse Meadows denied that a "Medical Code C" existed (ECF No. 1, p. 10); Nurse Flint "forgot" to give the hearing officer documentation of Upright's changed medical work status (ECF No. 1, p. 11); and Nurse Roach "tr[ied] to cover up all the mistakes everyone had made" by erroneously stating to the hearing officer that Upright was charged for his medical visits in June 2010, indicating that these visits did not involve a work-related injury (ECF No. 1, p. 12).

10

7). Upright asserts that the defendants' actions caused him to be wrongfully convicted of the disciplinary charge.

These allegations fail to state any § 1983 claim. The only penalty imposed in this disciplinary proceeding was a reprimand.[4] Upright fails to demonstrate that such a penalty imposed atypical hardship on him so as to trigger constitutional due process protections under Sandin. Thus, the alleged imperfections in the procedural protections provided in relation to the disciplinary charge, at the hearing stage and during appeals, do not implicate any constitutionally protected right, as required to bring a § 1983 claim concerning the proceeding. Any violations of VDOC procedures that defendants may have committed are not actionable under § 1983. See Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990).

Moreover, the hearing officer's finding that Upright was guilty of refusing to work was based solely on Blair's account that on June 9, 2010, Upright did not present her with any documentation excusing him from work. Upright admits that his medical work pass had expired the day before and was no longer valid on June 9, 2010, and that he refused to work. These facts alone provided a basis for his conviction on the disciplinary charge. Upright's arguments about the change in his medical work status had no bearing on this determination. Upright knew the date when his work pass expired, but he failed to take any action to have that pass extended

---

[4] In his complaint, Upright demands to "get all [his] good time back." His allegations and submissions indicate, however, that the disciplinary conviction he challenges did not result in the loss of any already accrued good conduct time. To the extent that Upright may not have been able to earn good conduct time at the same rate since losing his job, this reclassification is insufficient to implicate constitutional due process protections. See DeBlasio v. Johnson, 128 F. Supp. 2d 315, 329 (E.D. Va. 2000), aff'd, 13 F. App'x 96, 2001 WL 721398 (4th Cir. 2001) (unpublished) (finding that Virginia inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level).

11

before the expiration date. The court will summarily dismiss all claims regarding Upright's disciplinary conviction for refusing to work, pursuant to § 1915A(b)(1).

D.

Upright asserts that he is entitled to court-appointed counsel to assist him in bringing this civil action because he has mental health problems. Only under exceptional circumstances does the court request an attorney to represent an indigent, civil plaintiff who has a colorable claim, but lacks the capacity to present it. Gordon v. Leeke, 574 F.2d 1147, 1173 (4th Cir. 1978); Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). Because the court herein finds that Upright has no colorable claims, the court denies his motion for appointment of counsel.

Upright has also filed a motion for copies of additional medical records and a motion for summary judgment.[5] In light of the court's determination that Upright's submissions fail to state any claim actionable under § 1983, the court denies these pending motions as moot.

III

For the reasons stated, the court dismisses Upright's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. An appropriate order will enter this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 15th day of June, 2012.

                                                       */s/ James C. Turk*
                                                       Senior United States District Judge

---

[5] Although Upright styles this motion as seeking summary judgment, the motion actually seeks default judgment against the defendants because they did not answer his complaint. Defendants are not in default, however, because the action was never served on them, and is now being summarily dismissed for failure to state a claim.

12